**<u>Exhibit 1</u>**

**Blackstone/ BofA Settlement Agreement**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **In re:**<br><br>**EXTENDED STAY, INC. et al.,**<br><br>        **Debtors.** | Chapter 11<br><br>Case No. 09-13764 (JMP)<br><br>(Jointly Administered) |
| FINBARR O'CONNOR, solely in his capacity as Successor Trustee for and on behalf of the EXTENDED STAY LITIGATION TRUST, and<br><br>THE EXTENDED STAY LITIGATION TRUST,<br><br>        Plaintiffs,<br><br>        v.<br><br>THE BLACKSTONE GROUP, L.P., et al.,<br><br>        Defendants. | Adv. Pro. Nos. 11-02254, 11-02255, 11-02398 |

## SETTLEMENT AGREEMENT

This Settlement Agreement (this "Settlement Agreement") is entered into this 24th day of May 2013, by and among (1) FINBARR O'CONNOR, solely in his capacity as Successor Trustee for and on behalf of the Extended Stay Litigation Trust (the "Trustee"), (2) the EXTENDED STAY LITIGATION TRUST (the "Litigation Trust" and, together with the Trustee, "Plaintiffs"), (3) the BLACKSTONE DEFENDANTS, as identified on Exhibit A annexed hereto (the "Blackstone Defendants"), and (4) the BANK OF AMERICA

DEFENDANTS, as identified on Exhibit B annexed hereto (the "Bank of America Defendants", and collectively (1)-(4), the "Parties"), by and through their undersigned counsel.

## RECITALS

### The Chapter 11 Cases and Litigation Trust

A.      Extended Stay, Inc. ("ESI") and certain of its affiliates (collectively, the "Debtors"), each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") on either June 15, 2009 or February 18, 2010, in the United States Bankruptcy Court for the Southern District of New York (the "Court"), thereby commencing the above-captioned chapter 11 cases (collectively, the "Chapter 11 Cases").

B.      The Debtors' Fifth Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code dated June 8, 2010, as amended (the "Plan"), was confirmed by Court order dated July 20, 2010 and became effective on October 8, 2010.

C.      The Litigation Trust was formed on October 8, 2010, pursuant to the Plan and the Trustee is acting for and on behalf of the Litigation Trust.  The Litigation Trust was established for the sole purpose of liquidating and distributing the Litigation Trust Assets contributed to the Litigation Trust.  Specifically, the Litigation Trust has sole right, title, and interest to "(i) all claims and causes of action of the Debtors or the Debtors in Possession under sections 502(d), 542 through 551, and 553 of the Bankruptcy Code, and (ii) any other potential claims, causes of actions, charges, suits or rights of recovery referenced in the Examiner's Report; provided, however, that" those claims "shall not include (a) the Windows Litigation (as such term is defined in the Investment Agreement), and (b) any claims, causes of action, suits or rights of recovery against the Debtors, the Reorganized Debtors, NewCo, HVM, the Operating Advisor,

2

the Controlling Holder, the Trustee, the Successor Trustee, the Mortgage Facility Trust, the holders of Mortgage Certificates (solely in such capacity), or the Special Servicer." (Section 1.89 of the Plan.)

**The Litigations**

D.      On June 14 and 15, 2011, the Plaintiffs (through the Trustee's predecessor) filed five complaints (collectively, the "Complaints") commencing separate actions (Adv. Pro. Nos. 11-02398, 11-02254, 11-02255, 11-02256 and 11-02259) concerning the sale of Extended Stay Hotels in June 2007 ("2007 LBO"), four of which are currently pending before the Court (the "Litigations"). The Plaintiffs voluntarily dismissed the fifth Litigation (Adv. Pro. No. 11-02259) on September 26, 2012.

E.      The Complaints assert various causes of action, including state law claims such as breach of fiduciary duties, waste, and unjust enrichment, and claims under the Bankruptcy Code such as avoidance and recovery actions, among others. The Complaints also name dozens of individual and corporate entity defendants involved in the 2007 LBO, including the Blackstone Defendants and Bank of America Defendants.

F.      On or about November 1, 2011, the Blackstone Defendants and Bank of America Defendants filed motions to dismiss the Complaints (the "Motions to Dismiss"). The Plaintiffs have opposed the Motions to Dismiss. A hearing on the Motions to Dismiss is currently scheduled for May 14, 2013.

G.      After arm's-length negotiations, and to eliminate the uncertainties, burden and expense of further litigation, the Parties desire to consensually resolve the Litigations as against the Blackstone Defendants and Bank of America Defendants and the Motions to Dismiss on the terms set forth in this Settlement Agreement.

3

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements set forth in this Settlement Agreement, each of the Parties hereby agrees as follows:

1.      Effective Date.  This Settlement Agreement and the provisions contained herein are subject to and conditioned on entry of an order of the Court approving this Settlement Agreement (the "Approval Order").  The "Effective Date" of this Settlement Agreement shall be the date that the Approval Order becomes a final and non-appealable order, or such earlier date as the Parties may agree to in writing.

2.      Definitions.  For purposes of this Settlement Agreement, the following terms have the meanings specified in this paragraph:

a.      A "Related Party" shall be each of the past, present and future, direct and indirect parent entities, subsidiaries, affiliates, partnerships, general partners, limited partners, shareholders, investors (however denominated), joint ventures, joint venturers, members, officers, directors, managing directors, employees, contractors, consultants, auditors, accountants, financial advisors, professional advisors, investment bankers, representatives, insurers, trustees, trustors, agents, attorneys, predecessors, successors, assigns, and any controlling person of each of the Blackstone Defendants, Bank of America Defendants, Banc of America Securities, LLC, Merrill Lynch & Co, Bear Stearns & Co. Inc., and The Bear Stearns Companies Inc., but shall exclude, to the extent applicable, the persons and entities who are listed on Exhibit C annexed hereto.

b.      "Releasees" shall be (1) the Blackstone Defendants, Bank of America Defendants, Banc of America Securities, LLC, Merrill Lynch & Co, Bear Stearns & Co. Inc., and The Bear Stearns Companies Inc.; (2) the Related Parties; and (3) any persons to whom a Blackstone Defendant or one of the Blackstone Defendant's Related Parties owes an

indemnification obligation in connection with the 2007 LBO (but excluding as to all of the above, to the extent applicable, the persons and entities who are listed on Exhibit C annexed hereto).

      c.     "<u>Released Parties</u>" shall be the Plaintiffs and Releasees.

      3.     <u>Settlement Payment</u>.  Within five (5) business days after the Effective Date, the Blackstone Defendants shall pay or cause to be paid $10,000,000 (the "<u>Settlement Payment</u>") to the Litigation Trust, in full and complete settlement of any and all claims asserted by the Plaintiffs against the Released Parties (as defined above) in the Litigations and for the release, acquittal and discharge of the Released Claims (as defined below) against the Released Parties.  Such payment shall be made payable by wire transfer to the Litigation Trust as follows:

          Bank Name:  Citibank
          ABA Routing #:  021000089
          Account #:  497 384 2798
          Account Name:  Extended Stay Litigation Trust

      4.     <u>Cooperation</u>.

      a.     The Blackstone Defendants shall cooperate with Plaintiffs' reasonable requests for non-privileged, relevant documents in connection with the Litigations, including (with the aforementioned limitations) documents concerning the marketing, negotiations and closing of the 2007 LBO, the Information Memorandum (and other solicitation materials), corporate and capital structures, board minutes, bank statements, cash flows and other financial information, closing agenda and binders, emails and other correspondence related thereto.

      b.     The Blackstone Defendants shall exercise reasonable best efforts to cause Simpson Thacher & Bartlett LLP to cooperate with Plaintiffs' reasonable requests for (i) non-privileged, relevant information in connection with the Litigations; and (ii) non-privileged,

relevant documents in connection with the Litigations, including (with the aforementioned limitations) documents concerning the marketing, negotiations and closing of the 2007 LBO, the Information Memorandum (and other solicitation materials), corporate and capital structures, board minutes, bank statements, cash flows and other financial information, closing agenda and binders, emails and other correspondence related thereto.

   c. Upon prior notice and at times to be agreed upon by the Parties, the Blackstone Defendants shall make William Stein available to participate in a reasonable number of telephonic or in-person meetings concerning the Litigations with the Plaintiffs or their counsel.  If necessary, Mr. Stein shall work in good faith to make appropriate Blackstone resources available to answer Plaintiffs' reasonable questions concerning the Litigations for which Mr. Stein cannot provide an answer.

   d. The Parties shall negotiate appropriate restrictions on the disclosure of confidential information and documents in connection with this paragraph.

   e. In the event a Party fails to perform the cooperation obligations set forth in this agreement, the sole remedy shall be to seek specific performance against such Party, and this Settlement Agreement shall be otherwise unaffected.  Any dispute concerning the cooperation obligations of the Parties shall be reduced to writing before a Party seeks relief from the Court.

   5. <u>Dismissal</u>.  Within three (3) business days after the Litigation Trust's receipt of the Settlement Payment, Plaintiffs shall file a notice of dismissal of the Litigations solely as against the Blackstone Defendants and Bank of America Defendants, with prejudice, and with each Party bearing its own costs and expenses.

   6. <u>Release</u>.  Effective automatically and immediately upon the receipt of the

Settlement Payment by the Litigation Trust, (a) the Plaintiffs, on the one hand, and the Releasees, on the other hand, hereby release, acquit and discharge each other and each of their respective directors, members, shareholders, partners, officers, agents, employees, attorneys and other professionals from any and all claims, causes of action, cross-claims, counter-claims, charges, liabilities, demands, judgments, suits, obligations, debts, setoffs, rights of recovery, or liabilities for any obligations of any kind whatsoever (however denominated), whether in law or equity or arising under constitution, statute, regulation, ordinance, contract or otherwise, direct or indirect, whether known or unknown, foreseen or not foreseen, or present or contingent, for any injury, damage or loss of any kind whatsoever, including but not limited to compensatory damages, consequential damages, incidental damages, statutory liquidated damages, exemplary damages, punitive damages, costs, expenses, interest, and attorneys' fees, which they ever had, now have or may in the future have, own, or claim existing as of the Effective Date (the "Mutually Released Claims"); and (b) the Releasees hereby release, acquit and discharge the Litigation Trust Beneficiaries (as defined in the Plan), from any and all claims, causes of action, cross-claims, counter-claims, charges, liabilities, demands, judgments, suits, obligations, debts, setoffs, rights of recovery, or liabilities for any obligations of any kind whatsoever (however denominated), whether in law or equity or arising under constitution, statute, regulation, ordinance, contract or otherwise, direct or indirect, whether known or unknown, foreseen or not foreseen, or present or contingent, for any injury, damage or loss of any kind whatsoever, including but not limited to compensatory damages, consequential damages, incidental damages, statutory liquidated damages, exemplary damages, punitive damages, costs, expenses, interest, and attorneys' fees, which they ever had, now have or may in the future have, own, or claim, relating in any way to the 2007 LBO, the Litigation Trust, the Litigations, or execution, delivery

and performance of this Settlement Agreement, existing as of the Effective Date (the "Litigation Trust Beneficiary Released Claims," and, together with the Mutually Released Claims, the "Released Claims"); provided, however, that the Mutually Released Claims and the Litigation Trust Beneficiary Released Claims shall not include any claims, rights, or causes of action of U.S. Bank National Association, as successor in interest to Wells Fargo Bank, N.A., as Successor Trustee in Trust for holders of Wachovia Bank Commercial Mortgage Trust Commercial Mortgage Pass-Through Certificates, Series 2007-ESH, the Special Servicer (as defined in the Plan), the Mortgage Facility Trust (as defined in the Plan), or the Bank of America Defendants or their Related Parties arising under or related to the Intercreditor Agreement, the Mortgage Facility, the Mezzanine Facilities, or the Guaranty (each as defined in the Plan), which claims are not released and are expressly preserved.  For the avoidance of doubt, the foregoing carve-out does not involve the Blackstone Defendants or their Related Parties.  Nothing in this paragraph shall affect any Party's obligations explicitly set forth in this Settlement Agreement.

7.      Covenant Not To Sue.  Without limiting the foregoing release, and subject to the terms of this Settlement Agreement, the Released Parties hereby covenant and agree that, upon the Effective Date, they shall not institute, bring or commence any action or use any evidence or facts in any court, arbitration, or other forum against any other Released Parties with respect to the Released Claims, except as necessary to enforce this Settlement Agreement.

8.      No Admissions.  The Parties agree that this Settlement Agreement is a compromise and settlement of disputed claims and causes of action.  Nothing contained herein shall be construed as an admission of liability or damages by, on behalf of, or against any Party. The Parties' entry into this Settlement Agreement is not, and shall not be construed as or deemed to be evidence of, an admission as to the merit or lack of merit of any claims or defenses asserted

in the Litigations.  All communications (whether oral or in writing) between and/or among the Parties, their counsel, and/or their respective representatives relating to, concerning, or in connection with this Settlement Agreement, or the matters covered hereby and thereby, shall be governed and protected in accordance with Federal Rule of Evidence 408 to the fullest extent permitted by law.

9.    Entire Agreement.    This Settlement Agreement contains the entire agreement between the Parties, and supersedes all prior agreements, negotiations and discussions among them, with respect to the subject matter of this Settlement Agreement, except for the Confidentiality Agreement dated November 6, 2012, which shall survive execution of this Settlement Agreement as set forth in paragraph 18 below.  No statement made or action taken in the negotiation of the Settlement Agreement may be used by any Party for any purpose whatsoever.

10.    Waiver.    Any waiver by any Party of any provision of this Settlement Agreement or any right hereunder shall be effective only if in writing signed by that Party and identifying this Settlement Agreement by name and date.  Any waiver of any provision of this Settlement Agreement or of any right hereunder shall not be deemed a continuing waiver and shall not prevent or estop such Party from thereafter enforcing such provision or right.  The failure of any Party to insist in any one or more instance upon the strict performance by the other Parties of any of the terms or provisions of this Settlement Agreement shall not be construed as a waiver or relinquishment for the future of any such terms or provisions, but the same shall continue in full force and effect.

11.    Counterparts.  This Settlement Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original instrument, but all together shall

constitute one Agreement.

12. _Mutually dependent_.  The provisions of this Settlement Agreement are mutually dependent and not severable.

13. _Scope of Agreement_.  This Settlement Agreement shall be binding and enforceable upon the agents, receivers, trustees, employees, contractors, consultants, assignees, successors and assigns of the Parties hereto and their beneficiaries.

14. _No Rights in Third Parties_.  Except as expressly provided herein, nothing in this Settlement Agreement is intended to or does create any rights in third parties.  Nothing in this Agreement shall release or otherwise affect the claims against or Litigations with respect to any entity or person that is not a Releasee, including, without limitation, the persons and entities listed on Exhibit C hereto.

15. _Construction of Agreement_.  This Settlement Agreement shall not be construed more strictly against one Party than another, it being recognized that this Settlement Agreement is the result of arm's-length negotiations between the Parties, and all Parties have contributed substantially and materially to the preparation of this Settlement Agreement.  Any prior drafts of this Settlement Agreement shall not be used to determine the intent of the Parties. Further, the advice of legal counsel has been obtained by all Parties prior to each Party's execution of the Settlement Agreement.  The Parties enter into this Settlement Agreement freely and voluntarily and with a full understanding of its terms and significance.

16. _Admissibility of Settlement Agreement_.  This Settlement Agreement and the negotiations and discussions relating to this Settlement Agreement shall not be admissible in any lawsuit, arbitration, action, or other proceeding brought by any Party against any other Party, except as shall be necessary to enforce the terms of this Settlement Agreement.

17.    <u>Authority</u>.  The Parties represent and warrant that they are properly and fully empowered to enter into and execute this Settlement Agreement and that they know of no contractual commitment or legal limitation of, impediment to, or prohibition against their entry into this Settlement Agreement.

18.    <u>Confidentiality</u>.  All agreements by, between or among the Parties, their counsel and their other advisors as to the confidentiality of information exchanged between or among them shall remain in full force and effect, and shall survive the execution and any termination of this Settlement Agreement and the final consummation of this Settlement Agreement, if finally consummated, without regard to any of the conditions of this Settlement Agreement.

19.    <u>Governing Law</u>.  The validity and interpretation of this Settlement Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without regard to whether any conflicts of law would require the application of the law of another jurisdiction.

20.    <u>Risk of Subsequent Discovery</u>.  The Parties assume the risk of the subsequent discovery or understanding of any matter, fact or law, which, if now known or understood, would in any respect have affected this Settlement Agreement.

21.    <u>Expenses</u>.  Each Party shall be solely responsible for the attorneys' fees, expert fees, costs, and expenses, if any, incurred by that Party in connection with the Released Claims or this Agreement, provided, however, that nothing in this Settlement Agreement shall waive, release, or impair any right of the Bank of America Defendants under the Indemnification Agreement dated October 24, 2006, among Banc of America Securities LLC, BRE/HV Holdings L.L.C., and BHAC IV, L.L.C.

22.     <u>Headings</u>.  The headings in this Settlement Agreement are for convenience only and shall not be considered a part of or affect the construction or interpretation of any provision of this Settlement Agreement.

23.     <u>Jurisdiction</u>.  The Court shall have exclusive jurisdiction to enforce the terms of this Settlement Agreement and to decide any claims or disputes which may arise or result from, or relate to, this Settlement Agreement, any breach or default hereunder, or the transactions contemplated hereby, and the parties hereto agree, consent, and submit to jurisdiction of the Court.

**[Signature Page Follows]**

.

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement as of the
date first written above.

FINBARR O'CONNOR, solely as Successor Litigation
Trustee of the Extended Stay Litigation Trust

By: _____
      Finbarr O'Connor

EXTENDED STAY LITIGATION TRUST

By: _____
      Finbarr O'Connor, solely in his capacity as
      Successor Litigation Trustee of the Extended Stay
      Litigation Trust

THE BLACKSTONE DEFENDANTS

By: _____

THE BANK OF AMERICA DEFENDANTS

By: _____

13

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement as of the date first written above.

FINBARR O'CONNOR, solely as Successor Litigation Trustee of the Extended Stay Litigation Trust

By: _____
    Finbarr O'Connor

EXTENDED STAY LITIGATION TRUST

By: _____
    Finbarr O'Connor, solely in his capacity as
    Successor Litigation Trustee of the Extended Stay
    Litigation Trust

THE BLACKSTONE DEFENDANTS

By: _____
    [ REPRESENTATIVE]

THE BANK OF AMERICA DEFENDANTS

By: _____
    Benjamin S. Kaminetzky
    DAVIS POLK & WARDWELL LLP

    Attorneys for Bank of America, N.A, and
    Merrill Lynch, Pierce, Fenner & Smith
    Incorporated, as successor by merger to
    Banc of America Securities LLC

13

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement as of the date first written above.

FINBARR O'CONNOR, solely as Successor Litigation Trustee of the Extended Stay Litigation Trust

By: _____
      Finbarr O'Connor

EXTENDED STAY LITIGATION TRUST

By: _____
      Finbarr O'Connor, solely in his capacity as Successor
      Litigation Trustee of the Extended Stay Litigation Trust

THE BLACKSTONE GROUP L.P.

By:  Blackstone Group Management L.L.C., its General Partner

By: _____
      Name: John G. Finley
      Title: Chief Legal Officer

BLACKSTONE HOLDINGS I L.P.

By:  Blackstone Holdings I/II GP Inc., its General Partner

By: _____
      Name: John G. Finley
      Title: Chief Legal Officer

BLACKSTONE HOLDINGS II L.P.

By:    Blackstone Holdings I/II GP Inc., its General Partner

By: _____
Name: John G. Finley
Title: Chief Legal Officer


BLACKSTONE HOLDINGS III L.P.

By:    Blackstone Holdings III GP L.P., its General Partner

By:    Blackstone Holdings III GP Management L.L.C.,
its General Partner

By: _____
Name: John G. Finley
Title: Chief Legal Officer


BLACKSTONE HOLDINGS IV L.P.

By:    Blackstone Holdings IV GP L.P., its General Partner

By:    Blackstone Holdings IV GP Management
(Delaware) L.P., its General Partner

By:    Blackstone Holdings IV GP Management
L.L.C., its General Partner

By: _____
Name: John G. Finley
Title: Chief Legal Officer

BLACKSTONE HOLDINGS V L.P.

By:  Blackstone Holdings V GP L.P., its general partner

    By:  Blackstone Holdings V GP Management (Delaware)
         L.P., its general partner

        By:  Blackstone Holdings V GP Management L.L.C.,
            its general partner

            By: _____
               Name:  Stephen A. Schwarzman
               Title: Chairman and Chief Executive Officer

BLACKSTONE HOLDINGS I/II GP INC.

By: _____
    Name: John G. Finley
    Title: Chief Legal Officer

BLACKSTONE HOLDINGS III GP L.P.

By:  Blackstone Holdings III GP Management L.L.C., its
     General Partner

By: _____
    Name: John G. Finley
    Title: Chief Legal Officer

BLACKSTONE HOLDINGS IV GP L.P.

By:  Blackstone Holdings IV GP Management (Delaware)
     L.P., its General Partner

    By:  Blackstone Holdings IV GP Management L.L.C.,
        its General Partner

    By: _____
       Name: John G. Finley
       Title: Chief Legal Officer

BLACKSTONE HOLDINGS V L.P.

By:  Blackstone Holdings V GP L.P., its general partner

    By:  Blackstone Holdings V GP Management (Delaware)
       L.P., its general partner

        By:  Blackstone Holdings V GP Management L.L.C.,
           its general partner


        By:  _____
           Name:  Stephen A. Schwarzman
           Title: Chairman and Chief Executive Officer

BLACKSTONE HOLDINGS VII GP INC.

By:  _____
    Name: John G. Finley
    Title: Chief Legal Officer

BLACKSTONE HOLDINGS III GP L.P.

By:   Blackstone Holdings III GP Management L.L.C., its
     General Partner

By:  _____
    Name: John G. Finley
    Title: Chief Legal Officer


BLACKSTONE HOLDINGS IV GP L.P.

By:   Blackstone Holdings IV GP Management (Delaware)
     L.P., its General Partner

    By:   Blackstone Holdings IV GP Management L.L.C.,
       its General Partner

    By:  _____
      Name: John G. Finley
      Title: Chief Legal Officer

BLACKSTONE HOLDINGS V GP L.P.

By:  Blackstone Holdings V GP Management (Delaware)
     L.P., its general partner

    By:  Blackstone Holdings V GP Management L.L.C.,
        its general partner

    By: _____
       Name:  Stephen A. Schwarzman
       Title: Chairman and Chief Executive Officer


BLACKSTONE REAL ESTATE PARTNERS IV L.P.

By:  Blackstone Real Estate Associates IV L.P., its General
     Partner

    By:   BREA IV L.L.C., its General Partner


      By: _____
         Name: John G. Finley
         Title: Chief Legal Officer


BLACKSTONE CAPITAL PARTNERS IV L.P.

By:  Blackstone Management Associates IV L.L.C., its
     General Partner


By: _____
   Name: John G. Finley
   Title: Chief Legal Officer


BHAC IV, LLC


By: _____
   Name: William Stein

BLACKSTONE HOLDINGS V GP L.P.

By:  Blackstone Holdings V GP Management (Delaware)
L.P., its general partner

By:  Blackstone Holdings V GP Management L.L.C.,
its general partner

By: _____
Name:  Stephen A. Schwarzman
Title: Chairman and Chief Executive Officer

BLACKSTONE REAL ESTATE PARTNERS IV L.P.

By:    Blackstone Real Estate Associates IV L.P., its General
Partner

By:    BREA IV L.L.C., its General Partner

By: _____
Name: John G. Finley
Title: Chief Legal Officer

BLACKSTONE CAPITAL PARTNERS IV L.P.

By:    Blackstone Management Associates IV L.L.C., its
General Partner

By: _____
Name: John G. Finley
Title: Chief Legal Officer

BHAC IV, LLC

By: _____
Name: William Stein

BLACKSTONE HOLDINGS V GP L.P.

By:  Blackstone Holdings V GP Management (Delaware)
L.P., its general partner

By:  Blackstone Holdings V GP Management L.L.C.,
its general partner

By: _____
Name:  Stephen A. Schwarzman
Title: Chairman and Chief Executive Officer


BLACKSTONE REAL ESTATE PARTNERS IV L.P.

By:   Blackstone Real Estate Associates IV L.P., its General
Partner

By:   BREA IV L.L.C., its General Partner

By: _____
Name: John G. Finley
Title: Chief Legal Officer


BLACKSTONE CAPITAL PARTNERS IV L.P.

By:   Blackstone Management Associates IV L.L.C., its
General Partner

By: _____
Name: John G. Finley
Title: Chief Legal Officer


BHAC IV, LLC

By: _____
Name: William Stein

BRE/HV HOLDINGS LLC

By: _____
Name: William Stein


BRE/ESH HOLDINGS, LLC

By: _____
Name: William Stein


BLACKSTONE HOSPITALITY ACQUISITIONS, LLC

By: _____
Name: William Stein


PRIME HOSPITALITY, LLC

By: _____
Name: William Stein


JONATHAN D. GRAY

By: _____


WILLIAM STEIN

By: _____

BRE/HV HOLDINGS LLC

By: _____
Name: William Stein

BRE/ESH HOLDINGS, LLC

By: _____
Name: William Stein

BLACKSTONE HOSPITALITY ACQUISITIONS, LLC

By: _____
Name: William Stein

PRIME HOSPITALITY, LLC

By: _____
Name: William Stein

JONATHAN D. GRAY

By: _____

WILLIAM STEIN

By: _____

MICHAEL S. CHAE

By: _____


ROBERT L. FRIEDMAN

By: _____


GARY M. SUMERS

By: _____


DENNIS J. MCDONAGH

By: _____


ALAN MIYASAKI

By: _____

MICHAEL S. CHAE

By: _____

ROBERT L. FRIEDMAN

By: _____

GARY M. SUMERS

By: _____

DENNIS J. MCDONAGH

By: _____

ALAN MIYASAKI

By: _____

MICHAEL S. CHAE

By: _____


ROBERT L. FRIEDMAN

By: _____


GARY M. SUMERS

By: ___*(signature)*_____


DENNIS J. MCDONAGH

By: _____


ALAN MIYASAKI

By: _____

MICHAEL S. CHAE

By: _____

ROBERT L. FRIEDMAN

By: _____

GARY M. SUMERS

By: _____

DENNIS J. MCDONAGH

By: _____

ALAN MIYASAKI

By: _____

MICHAEL S. CHAE

By: _____


ROBERT L. FRIEDMAN

By: _____


GARY M. SUMERS

By: _____


DENNIS J. MCDONAGH

By: _____


ALAN MIYASAKI

By: _____

# EXHIBIT A

## Blackstone Defendants

- The Blackstone Group, L.P.
- Blackstone Holdings I L.P.
- Blackstone Holdings II L.P.
- Blackstone Holdings III L.P.
- Blackstone Holdings IV L.P.
- Blackstone Holdings V L.P.
- Blackstone Holdings I/II GP, Inc.
- Blackstone Holdings III GP L.L.C.
- Blackstone Holdings IV GP L.P.
- Blackstone Holdings V GP L.P.
- Blackstone Real Estate Partners IV L.P.
- Blackstone Capital Partners IV L.P.
- BHAC IV, LLC
- BRE/HV Holdings LLC
- BRE/ESH Holdings, LLC
- Blackstone Hospitality Acquisitions, LLC
- Prime Hospitality, LLC
- Jonathan D. Gray
- William Stein
- Michael Chae
- Robert L. Friedman
- Gary Sumers
- Dennis J. McDonagh
- Alan Miyasaki

**EXHIBIT B**

**<u>Bank of America Defendants</u>**

- Bank of America, N.A.
- Merrill Lynch, Pierce, Fenner & Smith Incorporated, as successor by merger to Banc of America Securities LLC

## EXHIBIT C

### Persons and Entities Expressly Excluded

- Citigroup Global Markets Inc.
- DL-DW Holdings, LLC
- Lightstone Holdings LLC
- The Lightstone Group, LLC
- Lightstone Commercial Management
- BHAC Capital IV, LLC
- Park Avenue Funding LLC
- PGRT ESH Inc.
- Arbor ESH II, LLC
- Arbor Commercial Mortgage, LLC
- Atmar Associates, LLC
- Glida One LLC
- Princeton ESH LLC
- Ron Invest LLC
- ABT-ESI LLC
- Mericash Funding LLC
- Polar Extended Stay (USA) L.P.
- David Lichtenstein
- Bruno de Vinck
- Peyton "Chip" Owen, Jr.
- Guy R. Milone, Jr.
- Joseph Chetrit
- Joseph Teichman
- Joseph Martello
- F. Joseph Rogers
- David Kim
- Gary DeLapp
- Thomas Burdi
- HVM, LLC
- HVM Manager
- HVM Canada Hotel Management LLC